**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

ERIC PLUNKETT, ET AL.                                                        **PLAINTIFFS**

VS.                                                        **CAUSE NO.: 1:07CV185-M-D**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                        **DEFENDANT**

## ORDER

This cause comes before the court on the motion of plaintiffs Eric Plunkett et al, for summary judgment, pursuant to Fed. R. Civ. P. 56. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has responded in opposition to the motion and filed its own cross-motion for summary judgment. The court, having considered the memoranda and submissions of the parties, concludes that State Farm's motion is well taken and should be granted and that plaintiffs' motion should be denied.

This is a declaratory judgment action arising out of an April 8, 2006 automobile accident in Monroe County, Mississippi between a vehicle driven by Tory Plunkett and a vehicle driven by Tyler Gray. Both drivers died in the collision, and plaintiff Eric Plunkett, a passenger, was injured. Plaintiffs have made claims for liability benefits based upon the alleged negligence of Tyler Gray, including one against Allstate, which insured the vehicle driven by Tyler Gray. At issue in this case, however, is plaintiffs' attempts to obtain benefits under a State Farm liability policy issued to Tyler's step- father, Dillard Pruitt, Jr. Pruitt did not own the vehicle driven by Tyler, and the crucial coverage issue is accordingly whether Tyler is properly considered an "insured" under Pruitt's State Farm liability policy. The only basis by which Tyler would qualify as such an insured would be if,

1

at the time of the accident, he was a "relative" of Pruitt within the meaning of the State Farm policy, as interpreted by Mississippi law.

Based solely upon the State Farm policy language, it would appear that defendant has a strong argument that Tyler was not, in fact, Pruitt's relative at the time of the accident. The State Farm policy defines a "relative" as a "person related to your or your spouse by blood, marriage, or adoption who resides primarily with you." Sate Farm concedes that, as the stepson of Pruitt, Tyler was related to him by marriage, but it strongly asserts that Tyler, the son of a divorced couple, lived primarily with his natural father, William Gray, at the time of the accident. This assertion is supported by the deposition testimony of Tyler's mother, who testified that Tyler did not live with her and Dillard Pruitt after he graduated from high school, "except for the short times when he would visit." Thus, if this court's decision were informed solely by the language of the State Farm policy issued to Dillard Pruitt, it would be abundantly clear that Tyler was not Pruitt's "relative" at the time of the accident and that the plaintiffs were therefore unable to seek recovery under the policy based upon Tyler's alleged negligence. However, the legal issues in this case are rendered much closer by the 2003 decision of *Grange Mut. Cas. Co. v. U.S. Fidelity & Guar. Co.*, 853 So.2d 1187 (Miss. 2003), where the Supreme Court addressed insurance coverage issues similar to those here.

At issue in *Grange* was whether the trial court erred in concluding that Chrisann Coker, the minor child of divorced parents, was an "insured" under a liability insurance policy which, the Supreme Court noted, "define[d] a family member as a person related to the named insured by blood and whose principal residence at the time of the accident was the location listed on the policy's declaration page." Thus, the liability policy in *Grange* only granted "family member" status, and thus "insured" status, to relatives whose "principal residence" was with the named insured. Clearly,

this fact pattern tracks the one in this case very closely.

Importantly, the Supreme Court in *Grange* did not analyze the coverage issues in that case based solely upon the language of the insurance policy therein. Instead, the Supreme Court held, as a matter of Mississippi law, that an "unemancipated minor is considered a household resident of both the custodial parent and the noncustodial parent for the purposes of automobile insurance." *Grange*, 853 So.2d at 1190. In so holding, the Supreme Court indicated that prior decisions reaching an identical result in the uninsured motorist context applied equally in the liability context, writing as follows:

> This Court has held, in evaluating coverage under an uninsured motorist policy, that "a child is a resident of both parents' households until he or she reaches the age of majority or becomes fully emancipated." *Aetna Cas. & Sur. Co. v. Williams*, 623 So.2d 1005, 1011 (Miss.1993). Prior Mississippi law held that a child was not necessarily a resident of a noncustodial parent's household. *Goens v. Arinder*, 248 Miss. 806, 161 So.2d 509, 516 (1964). *Goens* was disapproved of by *Aetna* and expressly overruled in *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So.2d 866, 875 (Miss.1995). Grange argues these cases should not apply because they both dealt with uninsured motorist coverage. However, if *Johnson* was making a distinction between uninsured motorist coverage and liability coverage, there would have been no need to expressly overrule *Goens*. It is clear that the law in this state is that an unemancipated minor is considered a household resident of both the custodial parent and the noncustodial parent for the purposes of automobile insurance.

*Id.* Thus, the Supreme Court in *Grange* appeared, at first blush, to announce a firm rule of law that unemancipated minors are properly considered residents of both their parents' households, in the liability insurance context. If the Supreme Court had based its holding in *Grange* upon this interpretation of the law, then the law in this context would be clear, and there would be no suggestion that the aforementioned paragraph was merely dicta.

In the very next paragraph, however, the Supreme Court in *Grange* appeared to base its holding largely upon facts which suggested that the primary residence of the unemancipated minor

in that case was actually in the named insured's household. Specifically, the Supreme Court wrote as follows:

> Alternatively, Grange's own statements indicate its belief that Chrisann is a resident of John and Cathy's household. Grange's claim file stated that Chrisann was living at John and Cathy's, that she went "home to Dad's on vacations," that she moved back in with John and Cathy five months before the accident, and that there was "[n]o way we can really claim here residence was not there." Additionally, in a December 13, 1995, letter to USF & G, Grange stated "it is now our belief that a court would find that Chrisann Coker's 'principal residence' on the date of loss was the residence on the declarations page of the policy issued to John and Cathy Coker ... Grange Mutual Casualty acknowledges coverage for the aforementioned accident." Grange's naked assertions that Chrisann's residence was at her mother's home are not supported by any facts in the record. ... The trial court was correct in ruling Chrisann was a resident of John and Cathy's household under Grange's insurance policy.

*Id.* at 1190-91. It is thus apparent that the facts in *Grange* provided a much better argument that the unemancipated minor in that case resided primarily with the named insured than is the case here.[1] Moreover, the fact that the Supreme Court expressly stated that the "trial court was correct in ruling Chrisann was a resident of John and Cathy's household under Grange's insurance policy" suggests that it was the Court's assessment of the facts in *Grange*, more so than its analysis of Mississippi law, which motivated the actual holding in the case. Moreover, for the reasons discussed below, there is reason to doubt whether prior Mississippi precedent was as clear as the Supreme Court suggested in *Grange*.

In setting forth its interpretation of prior Mississippi precedent, the Supreme Court in *Grange* placed particular emphasis upon the fact that its 1964 decision of *Goens v. Arinder* had been overruled in *Johnson v. Preferred Risk Auto. Ins. Co.* In *Goens*, the Supreme Court held that where

---

[1] The fact that Tyler had graduated high school did not render him "emancipated," and State Farm does not contend otherwise in its brief. Indeed, the court would note that the decedent in *Aetna* was nineteen-years old at the time of his accident but was nevertheless held to be the unemancipated minor child of divorced parents.

4

a daughter and her husband were temporarily staying in the home of her father while awaiting the completion of their new house and the birth of their child, the daughter was not a "resident" of the father's "household" under the terms of his liability insurance policy. *Goens*, 161 So.2d at 516. *Goens* did not involve an unemancipated minor, but it did involve liability, rather than UM coverage, and it set forth a ruling which is very similar to the one that State Farm would have this court make in the instant case. It is thus significant that the majority opinion in *Johnson* overruled *Goens*, but the concurring opinions of five justices in *Johnson* raise questions as to whether the Court actually intended to do so.

In his concurring opinion joined by two other justices in *Johnson*, Justice Hawkins expressed his view that *Goens* was correctly decided, although he viewed the Supreme Court's opinion in *Aetna v. Williams* as requiring that it be expressly overruled.[2] *Johnson*, 659 So.2d at 876. Justice Banks wrote a concurring opinion joined by Justice Pittman, in which he expressed his view that "*Goens v. Arinder* need not be overruled to reach th[e] result [today] and I would not do so." *Id.* at 877. *Johnson* thus represents a rather unusual decision, in that the majority opinion overruled *Goens* even though the concurring opinions of three justices expressed continued agreement with *Goens*, and the opinion of two justices expressed their view that it should not be overruled. Together, these concurring judges represented a majority of the court, even though their concurrences did not form the majority opinion. As noted previously, the Supreme Court in *Grange* expressly cited the overruling of *Goens* in support of its conclusion that "an unemancipated minor is

---

[2]Justice Hawkins made it clear that he disagreed with *Aetna*, and it also seems clear that he would have preferred that *Aetna*, rather than *Goens,* be overruled. Justice Hawkins did not take note of the fact that *Aetna* involved uninsured motorist coverage, while *Goens* involved liability coverage, thus providing an arguable basis for distinguishing the cases.

considered a household resident of both the custodial parent and the noncustodial parent for the purposes of automobile insurance." Given the unusual circumstances present in *Johnson*, however, it appears that the overruling of *Goens* is a rather thin reed upon which to base the aforementioned conclusion. This is particularly true when one considers relevant statutory provisions dealing with automobile insurance coverage.

Treating uninsured motorist and liability insurance the same for the purpose of determining "insured" status is rendered suspect by the language of the uninsured motorist statute, which expressly provides as follows:

> (b) The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.

Miss. Code Ann. § 83-11-103. Thus, the UM statute not only provides its own definition of "insured," but it also emphasizes that this definition "shall apply only to the uninsured motorist portion of the policy." By expressly setting forth its own definition of "insured" in the UM context, the Mississippi Legislature put insurers on notice that there were limitations upon their ability to privately contract regarding the scope of UM coverage, as it relates to the definition of "insured." While the Supreme Court has made a rather expansive interpretation of § 83-11-103(b), this is consistent with the court's interpretation of UM statutes in a variety of contexts. *See, e.g. Fidelity & Guar. Underwriters, Inc. v. Earnest*, 699 So.2d 585, 592 (Miss. 1997)(interpreting UM statutes as limiting offsets against UM benefits to amounts actually paid to the insured). It strikes this court as being a different matter for a court to simply impose, on its own initiative, limitations upon the

right of parties to contract in an area which the Mississippi Legislature and Mississippi Department of Insurance could have chosen to address, but did not do so.

In a diversity case such as this one, this court is required to apply Mississippi substantive law, which includes Mississippi Supreme Court decisions, but also enactments of the Mississippi Legislature. The Supreme Court interprets the enactments of the Legislature, and, if the Court's opinion in *Grange* were unequivocally based upon its interpretation of Mississippi law quoted above, then this court would be bound to apply it. For the reasons discussed previously, however, it appears to this court that the Supreme Court in *Grange* based its decision largely upon the facts of that case, which gave a much stronger argument to the party seeking liability coverage than is the case here. Indeed, it seems clear that, at the time of his accident, Tyler Gray's primary residence was with his natural father in Tennessee, and the court concludes that there exist no genuine issues of material fact in this regard. State Farm reached a private contractual agreement with Tyler's stepfather which only provided for coverage of any family members who resided "primarily" with him, and such was not the case with Tyler.

To the extent that the issues in the present context are unclear, this court is required to make an *Erie*-guess regarding how the Supreme Court would address them today. While it appears, as stated previously, that a majority of the Supreme Court justices in *Johnson* did not actually wish to see *Goens* overruled, there is even greater cause to doubt that the Court, as it is presently constituted, would adopt the position advanced by the plaintiffs here. Indeed, the Supreme Court has, in recent years, become much less willing to override contractual language in automobile insurance policies, even in the UM cases in which it has historically been most willing to do so. For example, the Supreme Court followed, for many years, a highly permissive approach regarding the "stacking" of

UM benefits, regardless of any policy provisions to the contrary. *See e.g. U.S. Fidelity and Guar. Co. v. Ferguson*, 698 So.2d 77, 80 (Miss. 1997)(holding that public policy renders antistacking clauses unenforceable, regardless of number of premiums paid or amount of premiums). Recent years, however, have seen a sharp shift in the Supreme Court's UM jurisprudence, in favor of simply applying anti-stacking provisions as written. *See, e.g. Meyers v. American States Insurance Company*, 914 So.2d 669 (Miss. 2005)(holding that insureds are not entitled to "stack" UM benefits beyond those for which named insured contracted; overruling a long line of decisions to the contrary).

In light of the foregoing, this court makes its best *Erie*-guess that the Mississippi Supreme Court would support State Farm's right to reach its own contractual agreement with Dillard Pruitt regarding the scope of liability insurance which he purchased. However, the court acknowledges that, in light of *Grange*, there exists sufficient doubt in this regard that the Fifth Circuit may deem it advisable to certify the questions raised in this case to the Mississippi Supreme Court for a definitive resolution.[3] Pending any such clarification, however, this court will err on the side of not restricting, based on judicial notions of public policy, private parties from contracting as they see fit in an area which the Legislature and the Mississippi Insurance Department have left reserved for such private contracting. The State Farm policy in this case limited "insured" status to relatives who resided "primarily" with Pruitt, and Tyler Gray's primary residence was not at Pruitt's house as of the date of the accident. This fact renders this case distinguishable from *Grange*, and it is apparent

---

[3]It will be unnecessary for the Fifth Circuit to certify this issue to the Mississippi Supreme Court if it accepts the alternative argument raised in State Farm's brief that the car driven by Tyler did not qualify as a "non-owned vehicle" within the meaning of the State Farm policy. State Farm cites no authority in support of its arguments in this regard, and this court is therefore reluctant to decide the case on this basis.

that the Supreme Court based its holding in *Grange* largely upon the facts of that case. State Farm's cross-motion for summary judgment, seeking a declaratory judgment that Tyler Gray was not an "insured" under the policy which it issued to Dillard Pruitt, will therefore be granted.

It is therefore ordered that State Farm's cross-motion for summary judgment [28-1] is granted. Plaintiffs' motion for summary judgment [23-1] will be denied, and this case is closed.

SO ORDERED, this the 13th day of April, 2009.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**